UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GUISHAN, INC. d/b/a MISTER SOFTEE, *et al.*,

                  Plaintiffs,                REPORT AND
                                                  RECOMMENDATION

     -against-

                                                08 CV 2407 (DLI)(RML)

FAITH ICE, INC. d/b/a MISTER SOFTEE, *et al.*,

                  Defendants.
-------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated November 12, 2008, the Honorable Dora L. Irizarry, United States

District Judge, referred this matter to me for a Report and Recommendation on plaintiffs' motion

for default judgments, injunctive relief, and attorney's fees and costs.  As explained in detail

below, I respectfully recommend that plaintiffs' requests be granted in part and denied in part.

**BACKGROUND AND FACTS**

        Plaintiffs Guishan, Inc. and Mister Softee, Inc. ("plaintiffs") commenced this

action against ten defendants in June 2008 alleging trademark and trade-dress infringement.

(See Complaint, dated June 16, 2008 ("Compl.").)  After all ten defendants failed to appear or

answer in this action, plaintiffs moved for a default judgment, and Judge Irizarry referred the

motion to me.  To date, plaintiffs have settled with two defendants:  Flints Rubble, Inc. and

George L. Adekoya.  (See Plaintiffs' Memorandum of Law in Support of Their Motion for Entry

of Judgment by Default, Permanent Injunction and Attorney's Fees, filed Nov. 10, 2008 ("Pls.'

Mem."), at 2 n.1; Notice of Dismissal With Respect to George Adekoya, dated Dec. 15, 2008.)

The remaining defendants are Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy

Dalageorgos, Demetrius Konstantakakos, Best Ice, Inc., Juan Jaramillo, Piedad Arevalo, and

Shyne Rims Creamy, Inc.

Plaintiffs have demonstrated that each defaulting defendant was properly served with a Summons and Complaint. (See Motion for Entry of Default, dated July 21, 2008, Exs. A, B, and D; Motion for Entry of Default, dated July 23, 2008, Ex. A; Summonses filed Sept. 4, 2008.) In addition, a Clerk's Certificate confirms that each defendant has failed to answer or otherwise move with respect to the Complaint and that the time to do so has expired. (See Clerk's Entries of Default, dated Sept. 16 and Nov. 11, 2008.) I therefore recommend that plaintiffs' motion for default judgment be granted.

It is well settled that a defaulting defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. E.g., Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Plaintiffs' allegations are as follows:

Plaintiff Mister Softee, Inc. ("Mister Softee") is a New Jersey corporation and franchisor of Mister Softee ice cream trucks. (Compl. ¶¶ 2, 17.) Plaintiff Guishan, Inc. is a New York corporation and sub-franchisor of Mister Softee. (Compl. ¶ 1.) Pursuant to a franchise agreement, Mister Softee granted Guishan, Inc. the right to use, and license others to use, Mister Softee's federally registered trademarks, trade dress and proprietary business system in and around Brooklyn, New York. (Compl. ¶¶ 1, 18.) Mister Softee owns the registered trademarks for the name "Mister Softee," related logos, and overall design of the Mister Softee ice cream truck. (Compl. ¶ 19.) Mister Softee and its franchisees have used these marks continuously since at least 1956. (Compl. ¶ 21.) According to plaintiffs, the design of a Mister Softee truck is not arbitrary but instead contains distinctive elements that make it uniquely identifiable to the consuming public, which consists mostly of children. (Pls.' Mem. at 4, 5; Compl. ¶ 25.)

Defendants are individuals and entities that operate mobile ice cream trucks in various depots in Kings, Queens, and Nassau Counties, New York. (Compl. ¶¶ 14, 16.) Plaintiffs allege that defendants are using (1) Mister Softee's federally registered trademarks and trade dress without authorization, and (2) trademarks and trade dress that are confusingly similar to those owned by Mister Softee. (Compl. ¶¶ 15-16.) Plaintiffs further allege that, because defendants' continued operation of mobile ice cream trucks causes the dilution of Mister Softee marks in violation of 15 U.S.C. § 1125(c), plaintiffs have no adequate remedy at law. (Pls.' Mem. at 14.) Plaintiffs seek a permanent injunction, attorney's fees, and costs. (See Pls.' Mem.; Affidavit of Matthew Brozik, Esq., dated Nov. 7, 2008 ("Brozik Aff."); Affidavit of Jeffrey Zucker, Esq., dated Nov. 7, 2008 ("Zucker Aff.").)

**DISCUSSION**

A. Permanent Injunction

Plaintiffs seek a permanent injunction against defendants' use of its registered trademarks. As stated above, because defendants defaulted, each has admitted to plaintiffs' well-pleaded allegations regarding liability. However, "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity . . . ." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 394 (2006). Under the Lanham Act, courts are to administer injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). A court may issue a permanent injunction if the plaintiff establishes:

> "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of

-3-

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." An injunction does not automatically follow a determination that a copyright or trademark has been infringed.

Microsoft Corp. v. AGA Solutions, Inc., 589 F. Supp. 2d 195, 204 (E.D.N.Y. 2008) (quoting

eBay, 547 U.S. at 391); see also Microsoft Corp. v. Atek 3000 Computer, Inc., No. 06 CV 6403,

2008 U.S. Dist. LEXIS 56689, at *15 (E.D.N.Y. July 23, 2008).  I will analyze the first two

factors together.

     1.  Irreparable Injury and Inadequacy of Monetary Damages

     "It is axiomatic that trademark laws are designed to protect the public from

confusion over the source of goods or services."  Prot. One Alarm Monitoring, Inc. v. Exec. Prot.

One Sec. Serv., LLC, 553 F. Supp. 2d 201, 205 (E.D.N.Y. 2008) (citing Hermes Int'l v. Lederer

de Paris Fifth Ave., Inc., 219 F.3d 104, 107-08 (2d Cir. 2000)).  As the Second Circuit has

explained, a trademark

epitomizes the goodwill of a business. This creation and perpetuation of goodwill depends on customer recognition. The nature of goodwill is dictated by the consumer's desire to do business with the same seller. The buyer expects the same experience with each purchase—this is the reason d'etre [sic] for the sale.

Power Test Petroleum Distribs. v. Calcu Gas, Inc., 754 F.2d 91, 97 (2d Cir. 1985).  "In a

trademark case, irreparable injury is established where there is any likelihood that an appreciable

number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to

the source of the goods in question."  Lobo Enters., Inc. v. Tunnel, Inc., 822 F.2d 331, 333 (2d

Cir. 1987) (internal quotation marks and citations omitted).

     To evaluate the likelihood of confusion, courts generally consider several non-

exclusive factors including:  (1) the strength of the plaintiff's mark; (2) the degree of similarity

between the two marks; (3) the proximity of the products in the marketplace; (4) the likelihood

that the plaintiff will enter a market related to that in which the defendant sells its product; (5)

the evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of the defendant's

product; and (8) the sophistication of the relevant consumer group.  See, e.g., Polaroid Corp. v.

Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961); see also Guishan, Inc. v. Scooby Scraps,

Inc., No. 08 CV 2684, 2008 U.S. Dist. LEXIS 76585, at *6 (E.D.N.Y. Sept. 15, 2008) (applying

the eight-factor test to infringement of Mister Softee marks); Prot. One Alarm Monitoring, 553

F. Supp. 2d at 206 (applying the eight-factor test in a trademark-infringement case).

   Plaintiffs' allegations, deemed true by defendants' default, sufficiently establish

the need for injunctive relief with respect to five of the defendants:  Faith Ice, Inc., Petes Ice

Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and Piedad M. Arevalo.  Mister

Softee's marks, having been in use since 1956, are strong.  Scooby Scraps, Inc., 2008 U.S. Dist.

LEXIS 76585, at *6.  All of these defendants, except defendant Arevalo, have used the Mister

Softee name in red cursive lettering and/or the Mister Softee trademarked Conehead Cartoon

Character logo.  (See Compl., Exs. B, C, D, and G.)  Although defendant Arevalo has not used

Mister Softee's trademark or logo, the overall appearance of the truck—including the nearly

identical menu, appearance and placement of decals, and red cursive lettering—bears sufficient

similarity as to raise a serious question of confusion.  (See Compl., Ex. J.)  All of these

defendants operate in the New York City ice cream truck market.  Plaintiff's target audience

consists of children, who are likely to be confused by the above defendants' use of Mister

Softee's marks or design.  Scooby Scraps, Inc., 2008 U.S. Dist. LEXIS 76585, at *6.

Furthermore, as in this case, "[i]Irreparable injury is suffered where monetary damages are

difficult to ascertain or are inadequate." Danielson v. Local 275, Laborers Int'l Union, 479 F.2d 1033, 1037 (2d Cir. 1973); accord Silverman v. Major League Baseball Player Relations Comm., 880 F. Supp. 246, 261 (S.D.N.Y. 1995) (Sotomayor, J.), aff'd, 67 F.3d 1054 (2d Cir. 1995).

However, with respect to defendants Demetrius Konstantakakos, Juan Jaramillo and Shyne Rims Creamy, Inc., plaintiffs have not shown that injunctive relief is warranted. Contrary to plaintiffs' allegations, none of these defendants has used the Conehead Cartoon Character. (Compare Pls.' Mem. at 17 ("As the Court can see in the photographs attached to the complaint, the infringing mark is an 'exact copy' of Mister Softee's Conehead Cartoon Character."), with Compl., Exs. E, F, I, and K (showing no such character).) Moreover, each of these defendants' trucks is sufficiently different in overall appearance from plaintiffs' trucks so as not to raise a serious question of confusion. (Compl., Exs. E, F, I, and K.) First, defendant Konstantakakos's trucks bear neither the Conehead Cartoon Character logo nor the name "Mister Softee." (See Compl., Exs. E and F.) Instead, they bear the words "Captain Softee" in capital, block-orange lettering, as opposed to the title-case, cursive, red lettering that is Mister Softee's signature. (See Compl., Exs. E and F.) The trucks' menus do not resemble plaintiffs'. (See Compl., Exs. A, E, and F.) While a Mister Softee truck announces "The Very Best" on the front and sports cartoon children on the back, the signs on defendant Konstantakakos's trucks say only "Slow! Watch for Children." (See Compl., Exs. A, E, and F.)

Second, defendant Jaramillo's truck also shows no sign of Mister Softee's name or cartoon logo. Its menus also do not resemble plaintiffs'. (See Compl., Exs. A and I.) Jaramillo's truck bears the words "Cones, Shakes, Sundaes" on the side and uses a sundae decal similar to that of a Mister Softee truck. (See Compl., Exs. A and I.) However, plaintiff's trademark registration number 2906357 does not give it exclusive rights to those words or to the

sundae decal.  (See Compl. ¶ 19.)  Defendant Jaramillo's truck looks sufficiently different as not to raise a serious question of confusion.

Finally, defendant Shyne Rims Creamy, Inc.'s truck has a simple design that presents no reasonable possibility of confusion with a Mister Softee truck.  (See Compl., Exs. A and K.)  Plaintiffs allege that Shyne Rims Creamy, Inc.'s menu contains the name "Mister Softee."  (See Compl. ¶ 45.)  However, the photographs they submitted are too blurry to substantiate this claim.  (See Compl., Ex. K.)  Aside from announcing "Cones, Shakes, Sundaes," the truck bears no lettering, decals or images whatsoever.  (Compl., Ex. K.)  It is simply a plain blue and white truck.  (Compl., Ex. K.)

In short, the trucks belonging to Konstantakakos, Jaramillo, and Shyne Rims Creamy, Inc. are not likely to confuse the ordinarily prudent ice cream truck customer.  The trucks are similar insofar as they are all white ice cream trucks with blue trim bearing general ice cream-related decals and lettering.  However, the appearance of each of these defendants' trucks is sufficiently different from plaintiffs' trucks that a reasonable customer would not be misled.  Moreover, plaintiffs' submissions do not substantiate an inference of bad faith with respect to these three defendants.  Plaintiffs have presented no evidence that Konstantakakos, Jaramillo, or Shyne Rims Creamy, Inc. intended to trade on the goodwill generated by Mister Softee's reputation.

### 2.  Balance of Hardships

Where defendants' trucks pose a serious likelihood of confusion, as with Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and Piedad M. Arevalo, the balance of hardships favors granting a permanent injunction "because such an injunction only serves to require defendant to comply with the . . . Lanham Act[] and plaintiff[s]

stand[] to lose goodwill and sales if an injunction is not granted."  Microsoft Corp. v. Atek 3000 Computer, Inc., 2008 U.S. Dist. LEXIS 56689, at *17.  By using Mister Softee marks, these five defendants unfairly benefitted from the goodwill that plaintiffs had cultivated.  Where the plaintiffs have failed to show a likelihood of confusion—as in the case of defendants Konstantakakos, Jaramillo, and Shyne Rims Creamy, Inc.—the balance of hardships tips against the issuance of an injunction.

3.  Public Interest

The entry of a permanent injunction against Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and Piedad M. Arevalo would not disserve the public interest.  See id. ("[T]he public interest lies in the enforcement of the principles recognized by Congress . . . , especially the prevention of consumer confusion.").  On the other hand, although all defendants are deemed to have admitted liability by defaulting, the public interest would be disserved by issuing an injunction when there is no likelihood of confusion and when plaintiffs' allegations are inconsistent with their evidence.  (Compare Pls.' Mem. at 17 ("As the court can see in the photographs attached to the complaint, the infringing mark is an 'exact copy' of Mister Softee's Conehead Cartoon Character."), with Compl., Exs. E, F, I, and K (photographs of trucks not showing any coneheaded characters).)

4.  Conclusion

Plaintiffs have shown that, because trucks belonging to defendants Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and Piedad M. Arevalo are likely to confuse the ordinarily prudent consumer, plaintiffs have suffered irreparable harm for which monetary damages are an inadequate remedy.  The balance of hardships weighs against those defendants, and the public interest will be served if their actions

are enjoined. Therefore, I respectfully recommend that plaintiffs' motion for a permanent injunction be granted with respect to these defendants. However, I respectfully recommend that plaintiffs' motion for injunctive relief be denied with respect to defendants Konstantakakos, Jaramillo, and Shyne Rims Creamy, Inc., as the public interest would be disserved by enjoining defendants whose actions show neither likelihood of confusion nor an inference of bad faith.

B. Attorney's Fees

Plaintiffs request a total of $34,071.85 in attorney's fees. (Brozik Aff. ¶¶ 9-10; Zucker Aff. ¶¶ 12-13.) Plaintiffs state that $9,671.80 of the total fee request pertains to their unsuccessful ex parte motion for seizure of counterfeit items pursuant to the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d). (See Zucker Aff. ¶ 5; Brozik Aff. ¶ 4; Summary Order, dated Mar. 18, 2009.) I will infer that plaintiffs' basis for the remaining $24,400.05 request is section 35(a) of the Lanham Act, which permits the court to award reasonable attorney's fees to the prevailing party in "exceptional cases." See 15 U.S.C. § 1117(a). In the Second Circuit, exceptional cases warranting an award of reasonable attorney's fees are limited to those evidencing fraud, bad faith, or willful infringement. See Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003). Even with a finding of bad faith, the decision to award attorney's fees remains within the sound discretion of the district court. See Gidatex, S.r.L. v. Campaniello Imps., Ltd., 82 F. Supp. 2d 136, 147 (S.D.N.Y. 2000).

As explained, plaintiffs have substantiated their claims of willful infringement only with respect to defendants Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and Piedad M. Arevalo. Plaintiffs have not established willful infringement with respect to defendants Konstantakakos, Jaramillo, and Shyne Rims Creamy, Inc. Also, plaintiffs have settled with defendants Flints Rubble, Inc. and George L. Adekoya.

Therefore, an award of reasonable attorney's fees is appropriate only with respect to five of the original ten defendants: Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and Piedad M. Arevalo. Plaintiffs support their fee request with contemporaneous time records.[1]

In the past, the Second Circuit employed the "lodestar" approach to calculating attorney's fees. See Bourgal v. Laekwood Haulage, Inc., 827 F. Supp. 126, 129 (E.D.N.Y. 1993) (citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989)). Under that approach, the court would multiply the number of hours reasonably worked by what the court deemed to be a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). As explained in Anthropologie, Inc. v. Forever 21, Inc., No. 07 Civ. 7873, 2009 U.S. Dist. LEXIS 41623, at *3-4 (S.D.N.Y. May 15, 2009),

> [a]lthough the term "lodestar" is now disfavored by the Second Circuit, see, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008), the applicable approach still contemplates (1) a consideration of the number of hours actually spent by counsel and other personnel that are deemed reasonably necessary to the successful outcome for the client and (2) the setting of reasonable hourly rates for counsel, a criterion most recently, if opaquely, described as "the rate a paying client would be willing to pay." Id. at 190.

Numerous factors are relevant to establishing a reasonable hourly rate, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the

---

[1] In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent, and work done. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983); Broad. Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 661 (S.D.N.Y. 1996).

amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93 (1989)); see also id. at 190 (endorsing the Johnson factors, "among others").  The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable.  See Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley, 461 U.S. at 437).

Plaintiffs are represented by two law firms in this action:  Einbinder & Dunn, LLP of New York and Fisher Zucker, LLC of Pennsylvania.  For both firms, the application was substantiated by invoices that were, presumably, submitted to their clients.  I will address the submissions from each firm separately.

1. Einbinder & Dunn, LLP

Einbinder & Dunn, LLP requests a total of $4,755.25 in attorney's fees.  Although the firm submitted contemporaneous time records to support its application, it did not submit a key to interpret it, and many of the attorney time entries are vague and non-descriptive.  (See Brozik Aff.)  For example, each of Matthew Brozik's entries for 7/17/08, 9/4/08, 9/24/08, and 10/14/08, totaling $285 in fees, states simply "Email with M. Pfeiffer."  Einbinder & Dunn, LLP submitted no information explaining who M. Pfeiffer is[2] or to what work the email exchange pertained.

_____

[2]  The court surmises that "M. Pfeiffer" is Mark Pfeiffer, whose name appears in the attorney list on the website for Fisher Zucker, LLC.  (See Welcome to Fisher & Zucker, LLC, http://www.fisherzucker.com (last visited July 20, 2009).)

In its application, Einbinder & Dunn, LLP includes a request for $1,549, resulting from 5.75 hours of attorney time and 3.5 hours of paralegal time, pertaining to its ex parte seizure motion.  Plaintiffs did not prevail on this motion.  (See Summary Order, dated Mar. 18, 2009.)  When calculating fee awards, it is appropriate to exclude unnecessarily expended hours. See, e.g., In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987); see also Hensley, 461 U.S. at 436 (stating that "the most critical factor is the degree of success obtained").  Here, plaintiffs are not entitled to recover fees for work on their unsuccessful seizure motion.  Reducing the hours to account for time spent on that motion leaves seven attorney hours and 17.5 paralegal hours.  In addition, because plaintiffs have not met their burden for obtaining permanent injunctions against Konstantakakos, Jaramillo, and Shyne Rims Creamy, Inc., they are not entitled to attorney's fees for the portion of their time spent litigating against those defendants.  Finally, after filing their fee application, plaintiffs settled with defendant Adekoya (see Notice of Dismissal, dated Dec. 15, 2008), and their attorneys' time spent litigating against that defendant should not be part of this fee award.

Einbinder & Dunn, LLP's application lacks any mention of the attorneys' and paralegals' backgrounds and experience.  (See Brozik Aff.)  Michael Einbinder, Esq. billed at $445 per hour, Matthew Brozik, Esq. billed at $285 per hour, and Alyssa Sibio, Kimia Sharifi, and Lydia Newcomb, presumably paralegals, billed at $85 per hour.  (See Brozik Aff., Ex. A.) According to the firm's website, Michael Einbinder has been practicing law since 1981, and Matthew Brozik has been doing so since 1999.[3]  Franchise, Real Estate, Business & Estate

_____

[3]  Einbinder & Dunn, LLP's fee application lacked any description of the attorneys' backgrounds and experience.  Where such information is lacking, courts may use their discretion to award fees at a rate lower than requested.  See, e.g., Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag Ag, No. 04 Civ. 2983, 2006 U.S. Dist. LEXIS 89148, at *17-18 (S.D.N.Y. Dec. 11, 2006) (declining to award fees at the requested rate because the court could

-12-

Lawyers | Einbinder & Dunn, http://www.ed-lawfirm.com/index.php (last visited July 8, 2009).

The court may also rely on its "own familiarity with the rates prevailing in the district."

Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005).  Based on my knowledge of the

rates prevailing in the Eastern District of New York and the attorneys' respective levels of

experience, I find their requested hourly rates reasonable.  See, e.g., Prot. One Alarm

Monitoring, 553 F. Supp. 2d at 209 (awarding similar attorney rates).  Although Einbinder &

Dunn, LLP did not submit information about the paralegals' experience, and no such information

is available on the firm's website, I find the requested hourly rate reasonable.  See id. (awarding

a higher paralegal rate).

When an application for attorney's fees contains vague documentation, the court

may make an across-the-board reduction of the total fee award.  U.S. Football League v. Nat'l

Football League, 887 F.2d 408, 415 (2d Cir. 1989).  Here, I recommend that the court reduce by

four ninths the hours that remain after deducting the hours pertaining to the unsuccessful seizure

motion.  This deduction would take into account that plaintiffs' application seeks fees regarding

nine of the original ten defendants, and that plaintiffs' attorneys' efforts have been successful

with respect to only five of those nine.  I further recommend that the remaining award of Mr.

Brozik's fees be reduced by an additional ten percent to account for the fact that many of the

time entries regarding his work are unclear and make it difficult for the court to determine the

reasonableness of time billed.

The resulting calculations are as follows:  once the seizure motion hours are

deducted from the fee application, Einbinder & Dunn, LLP is left with 6.5 attorney hours for

---

not judge the reasonableness of the request where the moving party did not provide background
and experience information).  Had the court not done independent research, it would have no
basis for evaluating the reasonableness of the requested hourly rates.

Matthew Brozik, 0.5 attorney hours for Michael Einbinder, and 17.5 paralegal hours.  Once

Michael Einbinder's hours are reduced by four ninths to account for the defendants against

whom injunctions are not suitable, the firm may recover for 0.27778 hours.  Multiplying by his

fee of $445 per hour results in a recovery of $123.61.  Once Matthew Brozik's hours are reduced

by four ninths and then by ten percent more to account for the vagueness of his time entries, the

firm may recover for 3.25 of his hours.  Multiplying by his fee of $285 per hour results in a

recovery of $926.25.  With regard to paralegal time, once the seizure motion hours are deducted

from the fee application, Einbinder & Dunn, LLP is left with 17.5 paralegal hours.  Reducing

those hours by four ninths leaves Einbinder & Dunn, LLP with 9.7222 paralegal hours, which,

multiplied by $85 per hour, results in a recovery of $826.39.  In sum, I recommend that

Einbinder & Dunn, LLP be awarded $1,876.25 in attorney's fees ($123.61 plus $926.25 plus

$826.39), which is an amount consistent with "what a reasonable, paying client would be willing

to pay," <u>Arbor Hill</u>, 522 F.3d at 184.

       2.  <u>Fisher Zucker, LLC's Attorney's Fees</u>

      Fisher Zucker, LLC requests a total of $29,496.60 in attorney's fees.  (<u>See</u> Zucker

Aff. ¶¶ 12-13.)  First, like Einbinder & Dunn, LLP, Fisher Zucker, LLC may not collect for time

spent on the ex parte seizure motion.  Fisher Zucker, LLC asserts that $8,122.80 pertains to the

seizure motion.  (<u>See</u> Zucker Aff. ¶13.)  Second, Fisher Zucker, LLC may collect only for work

pertaining to the five defendants that neither settled nor infringed willfully on plaintiffs' marks:

Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and

Piedad M. Arevalo.

      Like Einbinder & Dunn, LLP, Fisher Zucker, LLC submitted invoices with vague

time entries and without a key.  Each time entry corresponds to a person's initials, but there is no

indication of whether the person is an attorney or a paralegal, nor is there any information about the person's professional experience. The fees range between $225 and $350 per hour, including for clerical or administrative tasks. (See, e.g., Zucker Aff., Ex. A (entries for 6/17/2008, 7/7/2008, 7/8/2008, 7/9/2008, 7/14/2008, 7/15/2008, 9/25/2008) (billing $1,752.25 for 6.15 hours of work relating to service of process).) "[I]t is not reasonable to charge attorney's billing rates for administrative and clerical work, even if that work were performed by counsel." Shasgus v. Janssen, L.P., No. 08 CV 180A, 2009 U.S. Dist. LEXIS 36185, at *6 (W.D.N.Y. Apr. 29, 2009).

Fisher Zucker, LLC appears also to have billed for work pertaining to parties other than the original ten defendants included in the complaint. The fee application contains several references to what appears to be investigative work relating to non-parties. (See Zucker Aff., Ex. A (entries for 03/31/2008, 04/25/2008, 04/28/2008, 05/20/2008, 06/25/2008).) Moreover, the invoice contains a line item pertaining to "Draft Certificates of Service (14 Defendants)" without an explanation as to why fourteen, as opposed to ten, defendants are referenced. (See Zucker Aff., Ex. A (entry for 9/25/2008).) Given the lack of clarification, the court must conclude that Fisher Zucker, LLC billed for work pertaining to parties other than the original ten defendants.

According to my tabulation from Fisher Zucker's time sheets, the firm billed for 55.45 hours of work related to this case aside from the seizure motion. (See Zucker Aff., Ex. A.) My calculation includes work pertaining to the first settling defendant, Flints Rubble, Inc. Because Fisher Zucker, LLC is entitled to attorney's fees for only five of the original ten defendants, its fee award must be reduced by 50%. As explained supra, the court also has discretion to make an across-the-board reduction to account for problems in the fee application.

I recommend a further 30% reduction of hours from the originally requested amounts to account for the following: (1) lack of information about whether attorneys or paralegals conducted the work, (2) lack of information about any person's professional experience, (3) clerical work billed at attorney rates, (4) vagueness of the time entries, making it impossible for the court to assess the reasonableness of the work accomplished within the time billed, and (5) time entries pertaining to non-parties. In total, therefore, I recommend that fees be awarded for 20% of the requested hours.

With respect to the reasonableness of the requested hourly rates, Fisher Zucker, LLC did not provide the court with the names, professional background or experience of any person who worked on the case. Instead, the documents list attorneys and paralegals only by initials. By referencing Fisher Zucker, LLC's website, I have discovered that Mark Pfeiffer[4] graduated from law school in 1995, Jeffrey Zucker[5] has been practicing law for fifteen years, Paul Cianci[6] received his L.L.M. in 2000, and Frank Reino[7] graduated from law school in 2003. Given the prevailing attorney rates for trademark infringement cases in the Eastern District, I find the billed hourly rates—$350 for Mark Pfeiffer, $295 for Jeffrey Zucker, $295 for Paul Cianci, and $240 for Frank Reino—reasonable. See, e.g., Prot. One Alarm Monitoring, 553 F. Supp. 2d at 209 (E.D.N.Y. 2008) (awarding similar rates). Fisher Zucker, LLC's fee application contains a reference to "RH," for which there is no equivalent on the firm's website. (See Zucker Aff., Ex. A (entry for 9/25/2008).) Because RH billed $225 per hour for paralegal tasks, I must assume it is appropriate to reduce RH's recoverable hourly rate to the paralegal rate of

---

[4] The court assumes that "MP" in Zucker Aff., Ex. A. refers to Mark Pfeiffer.
[5] The court assumes that "JZ" in Zucker Aff., Ex. A refers to Jeffrey Zucker.
[6] The court assumes that "PC" in Zucker Aff., Ex. A refers to Paul Cianci.
[7] The court assumes that "FR" in Zucker Aff., Ex. A refers to Frank Reino.

$85 per hour.  Fisher Zucker, LLC will therefore recover fees according to the following calculations:

| Person | Original number of hours | Number of hours reduced by 50% to account for remaining defendants and 30% to account for application inadequacies | Hourly rate | Resulting recovery |
|---|---|---|---|---|
| Mark Pfeiffer | 42.7 | 8.54 | $350 | $2,989.00 |
| Jeffrey Zucker | 8.8 | 1.76 | $295 | $519.20 |
| Paul Cianci | 1.4 | 0.28 | $295 | $82.60 |
| Frank Reino | 0.3 | 0.06 | $240 | $14.40 |
| RH | 1.75 | 0.35 | $85 | $29.75 |

In sum, I recommend that Fisher Zucker, LLC recover $3,634.95 in attorney's fees.

Fisher Zucker, LLC also seeks $2,029.20 for online research.  (See Zucker Aff., Ex. A).  "[S]uch costs are compensable as attorneys' fees and may be awarded, but only where the charges are not already accounted for in the attorneys' hourly rates."  Pugach ex rel. United States v. M&T Mortgage Corp., 564 F. Supp. 2d 153, 165 (E.D.N.Y. 2008).  The submitted invoices suggest that this is a cost ordinarily charged to the firm's clients, see Prot. One Alarm Monitoring, Inc, 553 F. Supp. 2d at 211, and the amount is reasonable.  I therefore respectfully recommend that plaintiff's request for electronic research costs be granted but reduced by 50% to account for the settling and non-infringing defendants.  In sum, I recommend that Fisher Zucker, LLC be granted $4,649.55 in attorney's fees ($1,014.60 for electronic research plus $3,634.95 for billable attorney hours), which is consistent with "what a reasonable, paying client

would be willing to pay," Arbor Hill, 522 F.3d at 184.

      C.  Costs

               Fisher Zucker, LLC additionally requests an award of costs. The Lanham Act allows a prevailing party to recover costs, "subject to the principles of equity." 15 U.S.C. § 1117(a). Although a permanent injunction and attorney's fees are inappropriate with respect to defendants Konstantakakos, Jaramillo, and Shyne Rims Creamy, Inc., they must nonetheless pay costs. See, e.g., Sara Lee Corp. v. Bags of N. Y., Inc., 36 F. Supp. 2d 161, 170-71 (S.D.N.Y. 1999) (noting that "§ 1117(a) awards plaintiffs 'the costs of the action' only 'subject to the principles of equity' even without the higher showing of willfulness that justifies attorney fees."). Plaintiffs have prevailed with respect to all of the defaulting defendants with whom they did not settle: Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Demetrius Konstantakakos, Best Ice, Inc., Juan Jaramillo, Piedad M. Arevalo, and Shyne Rims Creamy, Inc. As a result, plaintiffs may recover reasonable costs from those defendants.

               Fisher Zucker, LLC seeks $2,135.32 in charges for overnight delivery, $760 for process servers, $1,796.31 for photocopying, and $37.08 for filing and court fees. Taxable costs under 28 U.S.C. § 1920 and Local Civ. R. 54.1(c) include the filing fee for a federal action. Moreover, "[o]ut-of-pocket litigation costs are generally recoverable if they are necessary for the representation of the client." Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999). "As with attorney's fees, the burden is on the moving party to explain and justify the costs." Prot. One Alarm Monitoring, Inc, 553 F. Supp. 2d at 210. Here, plaintiffs have not justified their sizable claims for overnight delivery or photocopying. This case did not involve protracted litigation, extensive discovery, or a large number of defendants. Rather, it was a routine case involving ten defaulting defendants, two of whom subsequently settled. I find

Fisher Zucker, LLC's unexplained request for high overnight delivery and photocopying costs unreasonable. Given the nature of this lawsuit, a recovery of $37.08 for filing and court fees, $200 for postage, $760 for process servers, and $200 for photocopying is reasonable without justification for higher expenditures.

Fisher Zucker, LLC also requests $13,500 in investigative fees. (See Zucker Aff. ¶ 11.) In Chanel, Inc. v. Schwartz, the court stated:

> [T]o the extent that [the plaintiff] seeks investigative fees as a component of its litigation costs (as opposed to an independent category of statutory remedies), I note that neither the relevant statute nor the local rules of this court consider such taxable costs to include the expense of investigators hired to purchase [a] counterfeit product.

No. 06 CV 3371, 2007 U.S. Dist. LEXIS 97147, at *27 (E.D.N.Y. Sept. 28, 2007) (citation omitted), report and recommendation adopted in relevant part, 2007 U.S. Dist. LEXIS 85493 (E.D.N.Y. Nov. 16, 2007). Nor are investigative fees ordinary "out-of-pocket litigation costs" like photocopying or mailing expenses.[8] Even if investigative fees were "costs" within the meaning of 15 U.S.C. § 1117(a), I could not recommend awarding any such fees here, because Fisher Zucker, LLC did not substantiate its request with contemporaneous time records or claim that the cost was reasonable. Instead, Fisher Zucker, LLC submitted four invoices from North American Investigations and a list of dates and locations of surveillance. (See Zucker Aff., Ex. B). The submitted documentation includes no mention of the specific defendants, making it impossible for the court to assess whether the time and money spent conducting surveillance per

---

[8] In Louis Vuitton Malletier, S.A. v. LY USA, No. 06 Civ. 13463, 2008 U.S. Dist. LEXIS 107592, at *7 (S.D.N.Y. Oct. 3, 2008), the court allowed the prevailing plaintiffs to recover investigative costs. However, in that case the defendants "acted willfully and used discovery tactics that undoubtedly increased the costs of prosecuting [the] litigation." Id. This case, in contrast, involved defaulting defendants, two of whom settled with plaintiffs.

defendant was reasonable.  See Chanel, 2007 U.S. Dist. LEXIS 97147, at *27 (noting the lack of

"any contemporaneous time records" as grounds for denying application for investigative fees).

Accordingly, I recommend that plaintiffs' request for investigator fees be denied.

In sum, I recommend that defendants Faith Ice, Inc., Petes Ice Cream Truck

Rental Corp., Tommy Dalageorgos, Demetrius Konstantakakos, Best Ice, Inc., Juan Jaramillo,

Piedad M. Arevalo, and Shyne Rims Creamy, Inc. be ordered to pay Fisher Zucker, LLC costs in

the amount of $1197.08 for process servers, photocopying, postage, and court fees.

D.  Joint and Several Liability for Attorney's Fees and Costs

In cases of trademark or copyright infringement, responsibility for attorney's fees

and costs can be joint and several.  See Getty Petroleum Corp. v. Bartco Petroleum Corp., 858

F.2d 103, 114 (2d Cir. 1988).  "It is within the court's discretion whether to impose liability in

that way[,] and we consider the willfulness of the infringers in making this determination."  U.S.

Media Corp. v. Edde Entm't, Inc., No. 94 Civ. 4849, 1999 U.S. Dist. LEXIS 10605, at *34

(S.D.N.Y. July 13, 1999) (interpreting the Copyright Act, 17 U.S.C. § 505).  Because the five

willful infringers—Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos,

Best Ice, Inc., and Piedad M. Arevalo—are all abundantly culpable, I recommend that they be

held jointly and severally liable for the $6525.80 ($1,876.25 plus $4,649.55) due Einbinder &

Dunn, LLP and Fisher Zucker, LLC in attorney's fees.  I also recommend that those five

defendants be held jointly and severally liable for their five-eights share of the costs, or $748.18.

In total, I recommend that the five willful infringers be held jointly and severally liable for fees

and costs in the amount of $7273.98.  Joint and several liability would not be appropriate for the

remaining three defendants—Konstantakakos, Jaramillo, and Shyne Rims Creamy, Inc.—so I

recommend that they be held separately liable for one eighth of the costs apiece, or $149.64.

## CONCLUSION

In sum, I respectfully recommend that plaintiffs' request for a permanent injunction be granted with respect to defendants Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and Piedad M. Arevalo and denied with respect to defendants Konstantakakos, Jaramillo, and Shyne Rims Creamy, Inc. I also recommend that defendants Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and Piedad M. Arevalo be held jointly and severally liable for attorney's fees to Einbinder & Dunn, LLC in the amount of $1,876.25 and to Fisher Zucker, LLC in the amount of $4,649.55. I recommend that defendants Faith Ice, Inc., Petes Ice Cream Truck Rental Corp., Tommy Dalageorgos, Best Ice, Inc., and Piedad M. Arevalo be held jointly and severally liable for $748.18 in costs to Fisher Zucker, LLC. Last, I recommend that defendants Konstantakakos, Jaramillo, and Shyne Rims Creamy, Inc. be ordered to pay Fisher Zucker, LLC $149.64 each in costs. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Irizarry and to my chambers, within ten (10) business days. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
        August 28, 2009