UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GUISHAN, INC. d/b/a MISTER SOFTEE, *et al.*, :
:
                 Plaintiffs, : **ORDER ADOPTING R&R IN PART,**
: **MODIFYING IN PART &**
    -against- : **REJECTING IN PART**
:
FAITH ICE, INC. d/b/a MISTER SOFTEE, *et al.*, : 08-CV-2407 (DLI) (RML)
:
                 Defendants. :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

Plaintiffs Guishan, Inc. and Mister Softee, Inc. ("plaintiffs") commenced this action against ten defendants alleging trademark infringement and unfair competition. After all ten defendants failed to appear or answer in this action, plaintiffs moved for a default judgment. The court referred the motions to the Hon. Robert M. Levy, U.S. Magistrate Judge. On August 28, 2009, Judge Levy issued a Report and Recommendation[1] ("R&R") wherein he recommended that the court grant plaintiffs' request for a permanent injunction against defendants Faith Ice, Inc. ("Faith"), Petes Ice Cream Truck Rental Corp. ("Petes"), Tommy Dalageorgos ("Dalageorgos"), Best Ice, Inc. ("Best"), and Piedad M. Arevalo ("Arevalo"), and deny plaintiffs' request for a permanent injunction with respect to defendants Demetrius Konstantakakos ("Konstantakakos"), Juan Jaramillo ("Jaramillo") and Shyne Rims Creamy, Inc ("Shyne"). Judge Levy also recommended that defendants Faith, Petes, Dalageorgos, Best, and Arevalo be held jointly and severally liable for: (1) attorney's fees to Einbinder & Dunn, LLC, in the amount of $1,876.25 and to Fischer Zucker, LLC ("Fischer") in the amount of $4,649.55, and

---

[1] Prior to the issuance of the R&R, plaintiffs settled with defendants Flints Rubble, Inc. and George L. Adekoya. After issuance of the R&R, plaintiffs voluntarily discontinued this action as against Jaramillo and, therefore, plaintiffs do not object to the R&R as it relates to Jaramillo.

1

(2) costs in the amount of $748.18 to Fischer. Lastly, Judge Levy recommended that defendants Konstantakakos, Jaramillo and Shyne each be held individually liable for $149.64 in costs to Fischer.

On September 17, 2009, plaintiffs filed objections to Judge Levy's recommendations. Specifically, plaintiffs object to Judge Levy's: (1) failure to recommend the entry of a permanent injunction against defendants Konstantakakos and Shyne; and (2) recommendations concerning attorney's fees and costs. In their objections, plaintiffs also request that the court award them the attorney's fees incurred in connection with their objections to Judge Levy's R&R.

For the following reasons, Judge Levy's R&R is hereby adopted in part, modified in part, and rejected in part.

## BACKGROUND

The court adopts the background set forth in the R&R (Docket Entry No. 30), familiarity with which is assumed for purposes of this Order.

## STANDARD OF REVIEW

When no objections[2] to an R&R are made, the court may adopt the R&R if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (citation omitted). When objections are made, a district judge must make a *de novo* determination with respect to those parts of the R&R to which any party objects. The district court may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b); *see also United States v. Raddatz*, 447 U.S. 667, 673-76 (1980).

---

[2] As to the portions of Judge Levy's R&R that have not been objected to, the court finds no clear error and hereby adopts those recommendations.

**DISCUSSION**

A default constitutes an admission of all well-pleaded factual allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A default also effectively constitutes an admission that the acts pleaded in the complaint violated the laws upon which the claim is based and caused injuries as alleged. *See Cablevision Systems New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 69-70 (2d Cir. 1981)). In their complaint, plaintiffs alleged that defendants' use of the Mister Softee trademarks constitutes trademark and trade dress infringement under the Lanham Act and common law unfair competition.

While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages. *Greyhound*, 973 F.2d at 158. Here, plaintiffs seek no monetary compensation. Rather, they seek attorney's fees, costs and the entry of permanent injunctions against defendants, enjoining them from using Mister Softee's proprietary trademarks and trade dress or any colorable imitation thereof in any manner whatsoever.

    I.    <u>Permanent Injunction</u>

To obtain a permanent injunction in a trademark action, a party "must succeed on the merits and 'show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989)); *see also Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 240 (S.D.N.Y. 2004). To establish success on the merits on a claim for injunctive relief under the Lanham Act, plaintiffs must establish ownership of a valid trademark, and that defendant's use of its mark is likely to create confusion regarding the

source of the product.[3] *See U2 Home Entertainment, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 319-20 (E.D.N.Y. 2007) (granting permanent injunction for trademark infringement after defendant defaulted); *Rolex Watch USA, Inc. v. Jones*, 2000 WL 1528263, at *2 (S.D.N.Y. Oct. 13, 2000). This showing of likelihood of confusion will also establish the irreparable harm requirement for permanent injunctive relief. *See Cartier, Inc.*, 348 F. Supp. 2d at 240.

To evaluate the likelihood of confusion, the court must consider the factors established in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961): (1) strength of the plaintiff's mark; (2) degree of similarity between the two marks; (3) proximity of the products in the marketplace; (4) likelihood that the plaintiff will enter a market related to that in which the defendant sells its product; (5) evidence of actual confusion; (6) defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group. *See Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995).

### A. Defendant Konstantakakos

Plaintiffs' allegations, as admitted by defendant's default, establish a clear likelihood of confusion resulting from the use of Konstantakakos' truck design. Mister Softee's trade dress mark is strong—it is registered with the Patent & Trademark Office and has been in use since 1956. (Compl. ¶¶ 19-21.) There is also a substantial degree of similarity between Mister Softee's trade dress and the Konstantakakos trucks (*e.g.*, blue horizontal stripe at the bottom of a white truck, the use of the term "Captain Softee" in lieu of the term "Mister Softee" in roughly the same location as it appears in plaintiff's mark, and the depiction of the sundae and milkshake containers in the same position as Mister Softee's mark). (Compl. ¶ 32, Exs. E, F.) Moreover,

---

[3] Mister Softee's trademarks are valid and protectable. *See Mister Softee, Inc. v. Valdez*, 2002 WL 554501, at *1 (S.D.N.Y. Apr. 15, 2002). Thus, the only matter at issue here is whether defendants' use of the marks is likely to create confusion.

there is a close proximity in terms of industry (the parties' trucks at issue all house mobile soft-ice-cream businesses) and geography (the parties compete in the New York City area). (Compl. ¶¶ 14, 16, 50.) Konstantakakos' use also demonstrates his bad faith and intent to deceive the public by copying the previously mentioned elements (along with the placement and wording of the child warnings) and using them on his own trucks. Furthermore, plaintiffs have no way to ensure the quality of defendant's ice cream products, or whether defendant complies with applicable health codes and regulations. (Compl. ¶ 55.) Lastly, although plaintiffs have not demonstrated actual confusion, Mister Softee's primary customer base is young children who could be very easily confused by Konstantakakos' truck design. (Compl. 25.)

Accordingly, because plaintiffs have a valid mark (Reg. No. 2,906,357) and have established likelihood of confusion, they succeed on the merits of their Lanham Act claim and have established a risk of irreparable harm. Plaintiffs have also demonstrated that they have no adequate remedy at law, since there is no assurance in the record against defendant's continued violation of plaintiffs' registered trade dress. Therefore, the court finds that plaintiffs are entitled to a permanent injunction against Konstantakakos.

B. Defendant Shyne

Plaintiffs' allegations, as admitted by defendant's default, also establish a likelihood of confusion resulting from the use of Shyne's truck design and service mark. As noted above, Mister Softee's marks (Reg. Nos. 2,128,918 and 2,906,357) are strong. (Compl. ¶¶ 19-21.) Although Shyne's truck design does not contain each element of Mister Softee's registered trade dress, a strong impression is conveyed by the white overall color and blue trim bordering the bottom of the truck, particularly in light of Shyne's menu display in the sliding window of its truck which contains the service mark "Mister Softee." (Compl. ¶ 45, Ex. K.) There is also a

close proximity in terms of industry (the parties' trucks house mobile soft-ice-cream businesses) and geography (the parties compete in the New York City area). (Compl. ¶¶ 14, 16, 50.) Moreover, Shyne's placement of the words "Cones," "Shakes," and "Sundaes" on its truck in roughly the same positions that they appear on the Mister Softee trucks, although not a part of Mister Softee's registered trade dress, further demonstrate its bad faith and intent to deceive the relevant public. (Compl. Ex. K.) Again, plaintiffs have no way to ensure the quality of defendant's ice cream products, or whether defendant complies with applicable health codes and regulations. (Compl. ¶ 55.) Lastly, although plaintiffs have not demonstrated actual confusion, Mister Softee's primary customer base is young children who could be very easily confused by Shyne's truck design, particularly when combined with the use of the "Mister Softee" service mark. (Compl. ¶ 25.) On balance, the *Polaroid* factors, as applied to the circumstances in this case, weigh in favor of a finding of a likelihood of confusion.

Accordingly, because plaintiffs have valid marks (Reg. Nos. 2,128,918 and 2,906,357) and have established likelihood of confusion, they succeed on the merits of their Lanham Act claim and have established a risk of irreparable harm. Moreover, plaintiffs have also demonstrated that they have no adequate remedy at law, since there is no assurance in the record against defendant's continued violation of Mister Softee's registered trade dress and service mark. Therefore, the court finds that plaintiffs are entitled to a permanent injunction against Shyne.

II. Attorney's Fees

A. Einbinder & Dunn, LLP

The court agrees with Judge Levy that Mr. Brozik's time entries are vague and adopts the recommendation of a ten-percent reduction. Accordingly, the court finds the following rates and

hours to be reasonable: Michael Einbinder, .5 hours at $445 per hour, Matthew Brozik, 5.85 hours at $285 per hour, and the three paralegals, 17.5 hours at $85 per hour. Se*e Protection One Alarm Monitoring, Inc. v. Executive Protection One*, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008) (awarding similar rates). This equates to fees in an amount of $3,377.25 ($222.5 + $1,667.25 + $1,487.5). Of course, this amount must be reduced to account for the three defendants against whom plaintiffs have not obtained an injunction. In sum, plaintiffs are hereby awarded $2,364.08 in attorney's fees ($3,377.25 X .7). The seven defendants against whom the plaintiff has secured a permanent injunction shall be jointly and severally liable for this amount.

B. Fischer Zucker, LLC

The court agrees with Judge Levy that the Fischer time entries are vague, often bill for clerical work at attorney rates, and appear to contain time entries related to non-parties. Thus, the court hereby adopts Judge Levy's recommendation of a thirty-percent reduction. Accordingly, the court finds the following rates and hours to be reasonable: Jeffrey Zucker, 6.16 hours at $295 per hour, Mark Pfeiffer, 29.89 hours at $350 per hour, Paul Cianci, .98 hours at $295 per hour, Frank Reino, .21 hours at $240 per hour, and Ryan Hyde, 1.225 hours at $85 per hour. *See Protection One*, 553 F. Supp. 2d at 209 (awarding similar rates). This equates to fees in an amount of $12,722.33 ($1,817.20 + $10,461.50 + $289.10 + $50.40 + $104.13). This amount must also be reduced to account for the three defendants against whom plaintiffs have not obtained an injunction. In sum, plaintiffs are hereby awarded $8,905.63 in attorney's fees ($12,722.33 X .7). The seven defendants against whom the plaintiff has secured a permanent injunction shall be jointly and severally liable for this amount.

C. Attorney's Fees Incurred in Connection with Plaintiffs' Objection

The decision to award attorney's fees remains within the sound discretion of the district court. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 136, 147 (S.D.N.Y. 2000). Many of the objections raised by the plaintiffs were a consequence of the incomplete or unclear evidentiary support submitted by them in support of their motion for default judgment. Under these circumstances, the court declines to award plaintiffs the attorney's fees incurred in connection with their objections.

III. Costs

The court finds the following costs to be reasonable in light of the plaintiffs' recent submissions: (1) $1,796.31 for photocopying; (2) $2,185.55 for process servers; (3) $37.08 for filing and court fees; (4) $709.77 for overnight delivery and postage; (5) $1,014.60 for electronic research; and (6) $13,800.00[4] in investigative fees, totaling $19,543.31. This amount must also be reduced to account for the three defendants against whom plaintiffs have not obtained an injunction. Accordingly, plaintiffs are hereby awarded $13,680.32 in costs ($19,543.31 X .7). The seven defendants against whom the plaintiff has secured a permanent injunction shall be jointly and severally liable for this amount.

**CONCLUSION**

For the reasons set forth above, Judge Levy's R&R is adopted in part, modified in part, and rejected in part. Accordingly, the court hereby ORDERS as follows:

1. Defendants Faith, Petes, Dalageorgos, Best, Arevalo, Konstantakakos and Shyne ("enjoined defendants") and their agents, employees and any person

---

[4] Plaintiffs requested $15,000 in investigative fees. However, the Exhibit A to the Supplemental Affidavit of Jeffrey Zucker does not contain a description of the investigative efforts purportedly conducted on August 16, 2008. Accordingly, $1,200 of the requested investigative fees have not been substantiated and, therefore, plaintiffs are awarded $13,800.

8

acting in concert with them are permanently enjoined from using Mister Softee's proprietary trademarks, trade names and trade dress or any colorable imitation thereof in any manner whatsoever.

2. Enjoined defendants shall, within ten (10) days from the date hereof: (a) paint the blue portion of their infringing ice cream trucks ("trucks") a color other than blue; (b) remove the name "Mister Softee" and any of Mister Softee's trademarks from the trucks and immediately and permanently cease doing business as "Mister Softee" or and derivative thereof; and (c) deliver to, or submit evidence satisfactory to plaintiffs of the destruction of all labels, signs, prints, packages, wrappers, receptacles and advertisements in defendants' possession, custody or control bearing the word and/or symbol that is the subject of the trademark or trade name violation or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same pursuant to 15 U.S.C. § 1118.

3. Plaintiffs are entitled to a total award of attorney's fees and costs in the amount of $24,950.03. Enjoined defendants are jointly and severally liable for this award.

4. Pursuant to 15 U.S.C. § 1116(a), enjoined defendants are directed to file with this court and serve on plaintiffs, within thirty (30) days after the service on enjoined defendants of this Order, a report in writing under oath setting forth in detail the manner and form in which the enjoined defendants have complied with this Order.

Plaintiffs are directed to serve a copy of this Order on enjoined defendants and to promptly file proof of service with the court via ECF.

SO ORDERED.

Dated: Brooklyn, New York
March 22, 2010

/s/
DORA L. IRIZARRY
United States District Judge